## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Raghavendra Vijayanagar | ) | 3:18-CV-00553 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jayaraman Krishna | ) | |
| *Defendant*. | ) | August 23, 2021 |

**MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR DEFAULT AS A SANCTION (ECF NO. 111)**

Kari A. Dooley, United States District Judge

Pending before the Court is Plaintiff's Motion for Default as to the Defendant, which is his second motion seeking sanctions.[1] This motion arises out of the Defendant's failure to comply with any of his pretrial obligations in this matter. The Defendant did not respond to the motion. Previously, the Court granted the motion in part, finding that Defendant's repeated and willful failure to meet the pretrial deadlines set by the Court, to include most significantly, his failure to contribute to a Joint Trial Memorandum as ordered by the Court and his failure to submit a separate Trial Memorandum thereafter as ordered by the Court, warranted sanctions. The Court further indicated that as a sanction, Defendant shall not be permitted to offer exhibits or witness testimony at the trial, having disclosed none in advance of the trial as required by the Court's orders and the Defendant shall not be permitted to object to the Plaintiff's evidence, having identified no objections in advance of the trial as required by the Court's orders. However, the Court concluded that the Defendant shall be able to object to questions posed by Plaintiff's counsel on direct examination of witnesses; may cross-examine the Plaintiff's witnesses; may present argument to

---

[1] The first motion concerned Defendant's lack of candor with the Court, when, during a telephonic status conference he told the Court that he did not have a working email through which he could be contacted. As the Court found, the statement was decidedly false at the time it was made, though the Court, giving the Defendant the benefit of the doubt, declined to issue any sanction as a result.

1

the jury and may participate in all other aspects of the trial. In issuing its order, the Court advised

that a memorandum of decision would be forthcoming. This is that memorandum.[2]

**Procedural History**

A detailed review of the Defendant's conduct during the pendency of this litigation is in

order.

The Complaint was filed on April 3, 2018.[3] On May 23, 2018, the Defendant appeared

through counsel. After the close of discovery, on November 4, 2019, the Court issued the first

Civil Jury Trial Management Order which provided that jury selection would proceed on March

3, 2020 and that the required Joint Trial Memorandum (*see* ECF No. 48) was due by February 11,

2020.

On December 20, 2019, counsel for the Defendant sought to withdraw as counsel. The

Court scheduled a hearing on the motion for January 14, 2020, but indicated that the hearing would

not go forward if substitute counsel appeared or if the Defendant filed a pro se appearance prior to

the date of the hearing. On January 14, 2020, the Defendant filed a pro se appearance and sought

a continuance of the trial dates so that he could secure substitute counsel. In the motion for a

continuance, the Defendant also asserted: "In the event that I continue to represent myself *pro-se*,

I will likewise need additional time to **complete the pretrial filings and prepare the case for the**

**trial**." (ECF No. 64 at 1 (emphasis added)).[4] The Court granted the motion to continue and issued

an Amended Civil Jury Trial Management Order on January 23, 2020. (ECF No. 69). Therein, jury

selection was set for April 7, 2020 and the Joint Trial Memorandum was required to be filed by

March 17, 2020.

---

[2] The Court's Standing Order on Joint Trial Memoranda is appended hereto. (ECF No. 48).
[3] The matter was re-assigned to the undersigned on September 20, 2018.
[4] It is therefore clear that the Defendant knew at the time that the obligations imposed by the Court were his to fulfill in the absence of counsel.

In light of the rapidly developing concerns regarding the coronavirus, on March 12, 2020, the Court scheduled a telephonic scheduling conference to be held on March 18, 2020. On March 17, 2020, as ordered, the Plaintiff filed a "Joint" Trial Memorandum, but indicated therein that the Defendant had not responded to multiple attempts to contact him so as to secure his participation in the "Joint" aspect of the Trial Memorandum. (ECF No. 73).

On March 18, 2020,[5] the Defendant represented that he had been ill and was unable to contribute to the Joint Trial Memorandum. (ECF No. 83 at 3). He also indicated that he was still in the process of securing substitute counsel. (*Id*.). During this conference, in response to the Defendant indicating he might be leaving the country, the Court advised the Defendant that he cannot unilaterally decide not to show up for trial but that the Defendant "can file whatever relief it is you believe you need, and I will take up those issues, and [Plaintiff's counsel], on behalf of his client, will have the opportunity to respond." (*Id*. at 5). When asked, the Defendant was unequivocal that he understood, indicating, "I will be definitely available for the call on April 13th at three o'clock. And if anything changes medically, **I will file the necessary documents in court for you to make a ruling on**." (*Id*. at 8–9). Finally, the Court specifically apprised the Defendant that it would issue new deadlines, which it did. The trial was continued to May 2020,[6] and the Defendant was ordered to file a Trial Memorandum by April 14, 2020. (ECF No. 75).

On April 13, 2020, the Court convened the next telephonic status conference. The Court first indicated that new deadlines would be set in light of the ongoing restriction on conducting jury trials. The Defendant again indicated that he was still trying to secure counsel and the Court observed that moving the deadlines would give counsel a window of time to come up to speed.

---

[5] It was the March 18, 2020 conference that the Defendant falsely represented that he did not have a working email through which he could be reached.
[6] It was unclear on March 18, 2020 the extent to which, ultimately, the coronavirus would require a shutdown of in court civil proceedings.

However, the Court also reiterated, "I will repeat, however, Mr. Krishna, if for any reason you are not able to secure counsel, those will be your obligations. You understand that?" (ECF No. 84 at 4). The Defendant again, unequivocal, "**I always have**. Thank you." (*Id*. (emphasis added)).

When Plaintiff's counsel made the observation that the Defendant had not filed his Trial Memorandum, (which was due the following day), the Defendant merely stated that "all that will be provided as soon as counsel is gotten. I should have the counsel soon. This gentleman, Plaintiff's counsel, would be able to talk and have conversations with my counsel, and that's the right way. And he'll be able to reach him, and so, all this will go away shortly."[7] (*Id*. at 8). The Court again advised the Defendant, "Well, Mr. Krishna, I hope that that's true, and I hope that you get counsel. But you've been talking about getting counsel since January, and you don't have counsel yet . . . But just because you're planning on getting counsel doesn't mean that you can ignore deadlines that the Court has set for you." (*Id*. at 9). The Court then indicated, as it had earlier, that new deadlines would be set stating that "I will enter a new date for that trial memo. But whether you have counsel or not, that's going to be your obligation. Okay?" to which the Defendant responded, "Absolutely, Your Honor." (*Id*.).

Jury selection was continued to June 2, 2020 and the Third Amended Civil Jury Trial Management Order required the Defendant to file his Trial Memorandum by May 12, 2020. (ECF No. 81). No counsel appeared for the Defendant and the Defendant did not file his Trial Memorandum. The Court next convened a telephonic status conference on May 26, 2020. After discussing the extended suspension of jury trials, and while trying to identify a realistic trial date in the fall of 2020, the Court observed that the pretrial deadlines had passed and all that needed to

---

[7] Although the Court did not specifically inquire as to whether the Defendant was poised to file his Trial Memorandum the following day, given that it was not submitted by the extended deadline (*see* ECF No. 81), it seems a fair assumption that he was not.

be scheduled was jury selection and trial. When asked why he had not filed his Trial Memorandum, the Defendant indicated that it was because his lawyer was not in a position to do so but again offered that his lawyer would be appearing in the near future. In response, the Court reminded the Defendant, as it had in the past, that the deadlines were his to meet, unless and until he had counsel, and that the Defendant had acknowledged as much during prior conferences. The Defendant then explained that he was in the process of finalizing arrangements with Attorney Doug Varga to represent him and that it would not be long before an appearance would be filed.[8] At the conclusion of the conference, the Defendant again arguably suggested that his attorney would file the necessary pretrial submissions, which prompted the Court to reiterate that the deadlines have passed and counsel may or may not be permitted a "do over" in terms of the pretrial obligations. The Court observed that the Defendant had not submitted a witness list, an exhibit list, or jury instructions and that it was unclear what impact the Defendant's failure to do so would have on the defense going forward.

Following this telephonic conference, the Defendant did not seek an extension *nunc pro tunc* within which to comply with the pretrial deadlines, made no effort to comply with the Court's order and, as noted, no counsel appeared for the Defendant. Jury selection was continued to November 3, 2020. (ECF No. 89).

In advance of jury selection, the Court convened the next telephonic status conference on October 2, 2020. After some discussion regarding the logistics of conducting jury trials, the Defendant raised a concern as to his own medical condition and whether he could safely proceed. On that issue, the Court advised the Defendant that if his doctors were of the opinion that he should not go forward, and he wanted the trial to move, he needed to file a motion on the docket. The

---

[8] To date, the Defendant's representations notwithstanding, Attorney Varga has not appeared in this matter.

Court asked the Defendant, and he agreed, to file something by October 9, 2020 if he was going to seek a continuance.

The Plaintiff then inquired as to whether some witnesses could appear remotely. When asked whether the Defendant had any objection, the illusory specter of the Defendant's attorney again appeared. In response to the inquiry, the Defendant indicated that he would have to consult with his attorney before answering. He seemed to re-affirm his intention to finalize the representation and indicated that he would advise the Court soon.

At the conclusion of the conference, Plaintiff's counsel again raised the Defendant's failure to comply with the pretrial deadlines to include the filing of a Trial Memorandum. The Court indicated that the Defendant would not be permitted to file any motions in limine and left the Plaintiff to seek whatever other relief he thought appropriate under the circumstances. The Court further observed that the failure of the Defendant to file the Trial Memorandum would significantly reduce the Defendant's ability to advance certain arguments.

Following this conference, the Defendant did not seek an extension *nunc pro tunc* within which to comply with the pretrial deadlines, made no effort to comply with the Court's order and, as already noted, no counsel appeared for the Defendant. Nor did the Defendant file anything by October 9, 2020 with respect to the trial date.

The next telephonic status conference in advance of jury selection was convened on October 26, 2020. The Court first confirmed with the Defendant that Attorney Varga was not going to be appearing for the Defendant, to which the Defendant stated that he was still talking to him; that he had paid Attorney Varga 50% of the retainer and was struggling to gather the remaining funds. The Defendant also stated that his doctors advised him not to leave home or to travel given the rise in COVID cases and the Defendant's medical circumstances. Ultimately, the Court

continued the matter noting that it would reschedule at the earliest date that the health situation would safely allow. (ECF No. 104).

Since October 2020, the Defendant has not sought an extension of time *nunc pro tunc* to comply with the pretrial deadlines, has made no effort to comply with the Court's order and no counsel has appeared for the Defendant.

On June 24, 2021, the Court again convened a telephonic status conference to discuss the trial. During the conference, the Defendant advised that Attorney Varga was not going to appear but that he was hiring a different attorney. When asked, the Defendant declined to identify the attorney because he had not finalized the arrangements. The Defendant also indicated that he has approximately two days of evidence that he intends to offer at trial. The Defendant requested a late-August or September trial date, which the Court was able to accommodate. Jury selection is scheduled for September 1, 2021 and trial is set to begin on September 13, 2021. (ECF No. 109). On July 6, 2021, the Plaintiff filed the instant motion.

**Law**

The Court first observes that "[a]ll litigants, including *pro ses*, have an obligation to comply with court orders, and failure to comply may result in sanctions, including dismissal with prejudice." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (alterations omitted; citation omitted; internal quotation marks omitted). "While a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, dismissal of a *pro se* litigant's action as a sanction may nonetheless be appropriate so long as a warning has been given that noncompliance can result in dismissal[.]" *Koehl v. Bernstein*, 740 F.3d 860, 862 (2d Cir. 2014) (*per curiam*) (citations omitted; internal quotation marks omitted). These observations have equal import when the proposed sanction is the default of a defendant rather than a dismissal of a plaintiff's case. *See*,

*e.g.*, *S.E.C. v. Setteducate*, 419 F. App'x 23, 24–25 (2d Cir. 2011) (summary order) (affirming default judgment entered against *pro se* defendant for failure to comply with discovery orders).

**Rule 16**

Federal Rule of Civil Procedure 16(f) allows a district court to issue an order imposing sanctions, "including those authorized by Rule 37(b)(2)(A)(ii)–(vii)," if a party or his attorney "fails to appear at a scheduling or other pretrial conference," "is substantially unprepared to participate—or does not participate in good faith—in the conference," or "fails to obey a scheduling or other pretrial order." FED. R. CIV. P. 16(f)(1). Such sanctions include "entry of a judgment by default against the disobedient party." *See Motown Rec. Co., L.P. v. Motown Beverage Co. of Ohio*, 165 F.3d 14 (2d Cir. 1998) (summary order) (affirming entry of default judgment "for failure to comply in a timely fashion with discovery requests and for 'continuing obstructionist behavior'").

Local Rule 16(g)(1) provides, "[t]he Court may impose sanctions directly against . . . any party who disobeys an order of the Court or intentionally obstructs the effective and efficient administration of justice." D. CONN. L. CIV. R. 16(g)(1). In *Lee v. Verizon Wireless*, the court, pursuant to its inherent authority and Local Rule 16(g)(1), sanctioned an attorney for, among other reasons, failing to respond to or communicate with the opposing party to facilitate the progression of the case. No. 3:07-cv-532 (AHN), 2007 WL 3232590, at *1–2 (D. Conn. Oct. 31, 2007).

**Rule 37(b)**

Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that when a party "fails to obey an order to provide or permit discovery,[9] . . . the court where the action is pending may issue

---

[9] The Court considers the Standing Order on Joint Trial Memoranda (ECF No. 48) to be an order to "provide" discovery in advance of trial. However, even if the Standing Order is not fairly characterized as such, the sanctions identified in Rule 37(b)(2)(A)(ii)–(vii) are equally available, as discussed above, for violations of pretrial orders issued pursuant to Rule 16.

further just orders." FED. R. CIV. P. 37(b)(2)(A). Such orders may include the following: "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; "striking pleadings in whole or in part"; or "rendering a default judgment against the disobedient party[.]" *Id*. The Court has "wide discretion in imposing sanctions under Rule 37[.]" *S.E. New England Tel. Co. v. Global NAPs, Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (internal quotation marks omitted; citation omitted). However, a sanction of default is a "drastic remedy" that should be imposed only after the court has considered lesser sanctions. *Id*. Default may be warranted however where the party's failure was willful, in bad faith or by fault of the party sanctioned.[10] *Id*. The Court considers several factors when exercising its discretion to impose sanctions, to include: "(1) the willfullness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Agiwal*, 555 F.3d at 302 (citations omitted; internal quotation marks omitted; alteration omitted) (discussing dismissal of an action). The Court is also mindful that Rule 37 sanctions are appropriate "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a sanction." *Id*. at 303 (internal quotation marks omitted; citation omitted) (discussing dismissal of an action).

**Attorney's Fees**

Pursuant to Federal Rule of Civil Procedure 37, "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the

---

[10] Here, as the Defendant is self-represented, there is no concern as to whether counsel played a role in the disobedience.

failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C); *see also* FED. R. CIV. P. 16(f)(2) ("[T]he court must order the party . . . to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.").

**Discussion**

It is on this record and against this legal backdrop that the Plaintiff seeks an order of default against the Defendant and requests that the current dates scheduled for jury selection and trial be utilized to convene a hearing in damages. The Plaintiff also seeks an order of attorneys' fees in the amount of $1,500.00.

As observed above, the Defendant did not oppose or respond to the Plaintiff's motion. And an exhaustive (and exhausting) review of the record reveals that some appreciable sanction is warranted for the Defendant's repeated failure to meet his pretrial deadlines and his failure to participate in the pretrial process required under the Standing Order on Joint Trial Memoranda.

Courts abhor a trial by ambush. *See Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966) ("The basic purpose of the federal rules, particularly those concerning discovery and disclosure, is to eliminate trial by ambush[.]"). The discovery rules and the Court's trial management orders are designed to put all parties and the Court on notice as to the nature of the claims and defenses; the evidence and the witnesses who can attest to same. *See In re PE Corp. Sec. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)) ("The discovery rules, 'together with pretrial procedures[,] make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent' by requiring disclosure of *all* relevant information."). The Joint Trial Memorandum is designed to identify with specificity the parties' anticipation with respect to witnesses, regardless

10

of who intends to call the witness, and the exhibits, regardless of who intends to offer the exhibit. The Joint Trial Memorandum requires the parties to submit proposed voir dire questions and jury instructions. It specifies the extent to which deposition testimony, if it is to be offered, must be identified in advance of trial. The Joint Trial Memorandum allows the Court and the parties to identify those exhibits for which an objection shall be made and the basis for that objection, which allows the Court, in turn, to address such evidentiary issues in advance of jury selection. All of these procedures are an integral part of, and indispensable to, a fair and just adjudication of the parties' dispute.

The Court first finds that the Defendant's conduct was a willful violation of this Court's orders. The Defendant completely failed to participate in the pretrial process of creating a Joint Trial Memorandum as ordered. His unwillingness to cooperate or even communicate with Plaintiff's counsel in this regard was consistent with his prior deception regarding whether he had a working email at which he could be reached. He has repeatedly eschewed any effort to engage him in case management, repeatedly deferring to his thus far non-appearing attorney.

Similarly, though the Court has repeatedly advised the Defendant that the pretrial deadlines were his obligation, and though he repeatedly acknowledged as much, he simply failed to file a Trial Memorandum and continued to assert, even after the deadlines were long passed, that his attorney will file what needs to be filed.

In addition, it is noteworthy that the Defendant has never sought to mitigate the extremely prejudicial impact of his willful misconduct or sought leave to comply, albeit *nunc pro tunc*, with the Court's orders.

Finally, it is clear that the Defendant's willful misconduct has eviscerated the purposes for which the Court's Standing Order is issued in the first place—to ensure a fair adjudication of the

parties' dispute. At present, the Defendant has the Plaintiff's entire trial plan—his witnesses, his exhibits, his proposed voir dire and jury instructions. The case is less than two weeks from jury selection and the Plaintiff has nothing with respect to the Defendant's trial plan. Such a situation is exceedingly unfair and cannot persist.

The Court believes that a default under these circumstances might well be within this Court's discretion, but nonetheless concludes that lesser sanctions and an award of attorney's fees can mitigate the prejudice to the Plaintiff resulting from the Defendant's dilatory approach to this litigation.

With respect to attorney's fees, an award thereof pursuant to Rule 37 is calculated "according to the lodestar formula, in which the number of hours spent by the attorneys is multiplied by the hourly rate normally charged for similar work by attorneys of like skill in the area." *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 266 (S.D.N.Y. 1995) (quotation marks omitted; citation omitted); *see Kandey Co. v. Barbera*, No. 11CV478A, 2012 WL 3838179, at *2 (W.D.N.Y. Sept. 4, 2012) (noting that "[t]he standard for determining whether the motion expenses claimed are reasonable are the same for Rule 37(b) sanction as with a Rule 37(a) sanction"); *see also Martinez v. New York City Health & Hosps. Corp.*, No. 15-Civ.-515 (ALC) (GWG), 2017 WL 6729296, at *5 (S.D.N.Y. Dec. 28, 2017) (noting that "[c]ourts have used the traditional 'lodestar' analysis in calculating fees under Rule 16(f)"). The lodestar is the presumptively reasonable fee in determining the amount of attorneys' fees and costs warranted in connection with a motion for sanctions. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 337 (S.D.N.Y. 2016); *see also Friedman v. SThree PLC.*, No. 3:14-cv-00378 (AWT), 2017 WL 4082678, at *3 (D. Conn. Sept. 15, 2017). The Plaintiff has not submitted any information to the Court regarding the time spent preparing the motion for default

or the hourly rates of the persons involved. The Court cannot therefore determine the lodestar or whether any adjustment to the lodestar is appropriate under the circumstances.

On or before September 10, 2021, the Plaintiff shall submit an affidavit of attorney's fees to support his request from which the Court will determine an appropriate award. The Defendant shall have the opportunity to contest the reasonableness of the award by objection on or before September 24, 2021.

As additional sanctions, in view of the above, the Court finds that to allow the Defendant to offer witnesses or exhibits when ***none*** have been disclosed as ordered would be to condone trial by ambush and he is and shall be precluded from offering either witness testimony or exhibits during the trial. To allow the Defendant to object during trial to the Plaintiff's exhibits when he was ordered to identify any such objections in advance of the trial would be to condone trial by ambush and he is and shall be precluded from offering any objections to the Plaintiff's disclosed exhibits. The Defendant shall be permitted to object to questions posed by Plaintiff's counsel during the direct examination of witnesses; may cross-examine Plaintiff's witnesses; may make arguments to the jury and may otherwise fully participate in both jury selection and the trial of this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of August 2021.

 */s/ Kari A. Dooley*          
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE